IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02389-WDM-MEH

DIMITRI R. HILL,

    Plaintiff,

v.

ITT FEDERAL SERVICES INTERNATIONAL CORPORATION, a Delaware corporation,

    Defendant.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Miller, J.

This matter is before me on the motion for summary judgment filed by defendant ITT Federal Services International Corporation (ITT). Plaintiff Dimitri R. Hill (Hill) opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, I will grant the motion.

Background[1]

This is an employment dispute lawsuit brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-1-2000e-17, and Colorado state law. At all times relevant to the complaint, ITT, performing under a federal contract, operated and maintained a communications network based at Camp Doha in Kuwait City, Kuwait; the communications network was designed to support United States combat operations in

---

[1] The facts presented here are drawn from the parties' summary judgment briefs and attached evidence and the Final Pretrial Order; unless otherwise indicated, they appear to be undisputed.

Iraq. Hill, an African-American male, worked for ITT at Camp Doha's Theater Network Operations Security Center (TNOSC) from approximately March 28, 2003, until May 25, 2003, when ITT terminated his employment.[2] Hill was hired to work with and administer Tivoli, the principal software behind the TNOSC's monitoring system.

The gravamen of Hill's Title VII claims is that ITT permitted a co-worker, Jeff Hass, to harass Hill. It is undisputed that, in the short period of their employment with ITT, Hill and Hass had a number of altercations and disputes requiring attention from supervisors. Both Hill and Hass were fired during their ninety-day probationary periods. Although Hass appears to have been fired based on his behavior, ITT asserts that it terminated Hill on the basis of poor work performance and breach of its security policies.

Following dismissal of two claims by my September 30, 2005 order on a motion to dismiss, Hill's pending claims allege: (1 and 2) race discrimination (including hostile work environment) and retaliation in violation of Title VII; (3) negligent supervision; (4) breach of implied contract; and (5) breach of express covenant of good faith and fair dealing.

ITT moves for summary judgment on all these claims.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

---

[2] Hill was hired shortly before March 28 but apparently did not begin work in Kuwait until that date.

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence. In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). *See generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-804.

Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection." *Id*. at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate

3

some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000). The plaintiff must show pretext by demonstrating that the defendant was more likely motivated by a discriminatory reason or that the defendant's proffered reason "is unworthy of credence." *Id.* (quotation omitted). *See also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

## Discussion

My resolution of this case is driven by the inadequacy of Hill's legal argument in response to the motion for summary judgment. To borrow loosely from *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998), Hill "gives insufficient attention to the procedural posture of this" case. The response brief is 35 pages long. Of this, however, the legal argument accounts for only 2 ½ pages. The other 32 pages are used, almost equally, for responding to ITT's statement of undisputed facts and for setting forth a statement of additional disputed facts, the latter consisting of 108 factual statements.

I suspect that Hill hopes that I take one look at the spate of pages devoted to denying ITT's undisputed facts and adding 108 statements of allegedly disputed facts and

assume that, if there are this many facts at issue, surely summary judgment is not appropriate. Hill ignores the plain language of Rule 56(c), however. It is not the existence of *any* disputed fact that governs whether a case is decided on summary judgment or whether it proceeds to trial. Rather, it is the existence of *genuine* issues of disputed *material* facts that controls. I am unable to determine whether a given factual dispute raised by Hill is material to the legal claims presented unless, in his legal argument, he presents some analysis of those facts in the context of the relevant law. Here, the legal argument, set forth primarily in footnotes, consists almost entirely of citations to Tenth Circuit cases discussing employment discrimination. Hill makes no attempt to analogize the facts of his case to those discussed by the cited cases. Where he does reference specific evidence, he fails to demonstrate that the legal standard relied on applies to his claim.[3]

> It is the party's, and not the district court's function, to present the material facts to the court and then, *in its analysis, apply those facts to the law.* It is not the court's role to hunt through the briefing and determine whether facts lurking in the background support a particular legal contention for which the party did not offer them.

*Mitchell v. City of Wichita, Kansas*, 140 Fed. Appx. 767, 781 n. 16 (10th Cir. 2005) (2005 WL 1635381) (holding that district court was not obligated to consider statement of 133 additional facts presented in response brief where plaintiff made no attempt to explain how

---

[3] For instance, Hill discusses retaliation by co-workers under the standard set forth in *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998). He does not respond to ITT's assertion that his retaliation claim must be dismissed because there is no evidence that ITT was aware he engaged in opposition to Title VII discrimination. As he admits that he never expressly told any supervisor that the harassment he complained of was racially motivated, his listing of alleged harassment and purported inaction by ITT is of no avail.

or why the statements supported his allegations of discrimination). *See also Adler*, 144 F.3d at 671, 672 (legal discussion in response to summary judgment made only seven references to attached materials; district court is not required to act as an advocate and comb through record to make the party's case for it).

Nevertheless, I will address, where possible, the arguments presented in the parties' briefs to ensure that ITT is entitled to summary judgment as a matter of law.[4]

With regard to the discrimination claim, Hill claims he was the victim of disparate treatment, but he fails to demonstrate how any non-African-American employees were similarly situated to him. Such evidence is a necessary part of his claim. To establish a *prima facie* case of discrimination based on disparate treatment, Hill must show he was treated differently than similarly-situated, non-protected employees who engaged in the same or similar conduct. This requires some evidence that the targeted employees (1) dealt with the same supervisor, (2) were subject to the same work standards, and (3) had engaged in the same conduct without differentiating or mitigating circumstances. *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005).

To the extent Hill raises a hostile work environment claim, he has presented no evidence that the environment was racially hostile. Indeed, he admits that he never heard Hass use a racial slur or epithet, that he never made reference to race discrimination in any of his written complaints concerning Hass, that he did not expressly inform any supervisor that Hass's treatment of him was based on race, and that supervisors involved

---

[4] I interpret Hill's failure to respond at all to ITT's arguments that the Title VII discrimination claim based on alleged demotion, overtime, and lack of promotion as a concession that these claims must be dismissed.

in the decision to terminate him did not consider his race.[5] See Response at ¶¶ 25, 26, 84, 85, 96, 103,111, and 114. Hill simply has not pointed to any evidence to suggest that "the harassment was racial or stemmed from racial animus." *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not actionable").

Hill's admissions regarding ITT's lack of knowledge that his complaints raised issues of racial harassment and discrimination also defeat his retaliation claim. In the absence of evidence that he complained of racial discrimination, he cannot demonstrate that ITT knew he had engaged in protected opposition and retaliated against him for doing so. *Peterson v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) (employer's action against employee cannot be *because* of protected opposition unless the employer knows employee has engaged in protected opposition, *i.e.*, that employer knows the complaints were motivated by employee's belief that discrimination occurred).

Finally, Hill's legal argument in response to the motion for summary judgment on the state law claims of negligent supervision, breach of implied contract, and breach of the duty of good faith and fair dealing is almost non-existent and is unavailing. It is limited to one sentence (alleging that ITT never enforced its policies as to Caucasian co-workers, with no explanation of whether same policies applied to plaintiff and his co-workers) and a footnote referencing several provisions of ITT policies, with citation to exhibits that

---

[5] Hill's position seems to be that, although he never expressly raised race as the basis for Hass's actions, he "suggested" or "hinted" to his supervisors that race was an issue. The evidence he cites for this proposition is statements contained in his declaration. Exhibit 1 to Response. His declaration itself, however, makes no reference to complaints of race discrimination, nor does it explain how race was "suggested" or "hinted" in his complaints to supervisors.

contain no analysis of the relevant language of the policies in the context of applicable law and the facts of the case.

Because Hill does not explain how his myriad factual statements are material to the legal claims, I must conclude there are no genuine factual issues precluding summary judgment. Upon review of ITT's arguments and legal authority, I concur that it is entitled to summary judgment on Hill's claims as a matter of law.

Accordingly, it is ordered:

1. The motion for summary judgment, filed November 21, 2005 (Docket No. 46) is granted.

2. This case is dismissed.

3. ITT may have its costs.

DATED at Denver, Colorado, on March 23, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge